## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Danielle L. Gregory
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of, | August 31, 2015 |
| | Court of Appeals Cause No. 49A05-1501-JT-24 |
| L.P. (Minor Child), | Appeal from the Marion Superior Court |
| and, | |
| B.A. (Mother), | The Honorable Marilyn Moores, Judge |
| *Appellant,* | The Honorable Larry Bradley, Magistrate |
| v. | Trial Court Cause No. 49D09-1407-JT-336 |

The Indiana Department of
Child Services,

*Appellee.*

**Barnes, Judge.**

# Case Summary

[1] B.A. ("Mother") appeals the trial court's termination of her parental rights to her child, L.P. We affirm.

# Issue

[2] Mother raises one issue, which we restate as whether the evidence is sufficient to support the termination of her parental rights.

# Facts

[3] L.P. was born in September 2012 to Mother and S.P. ("Father"). At the hospital, Mother and Father seemed "completely out of it," and Mother admitted to taking Ativan, Ambien, and Nyquil while pregnant. Petitioner's Ex. 1 p. 2. Mother did not have a current prescription for the medications. Both Mother and L.P. tested positive for benzodiazepines. L.P. was exhibiting withdrawal symptoms, and Mother was unable to understand L.P.'s medical issues and denied that anything was wrong with L.P. During Mother's hospital

stay, she left her wing and was under the influence of something when she returned. Mother left the hospital without L.P. against medical advice. At that time, Mother and Father were unemployed and had been living at a hotel.

[4]  The Department of Child Services filed a petition alleging that L.P. was a child in need of services ("CHINS") because of Mother and Father's drug use, the fact that L.P. was born with drugs in her system, Mother's lack of understanding regarding L.P.'s medical issues, Mother's housing instability and unemployment, and a warrant for Father's arrest. Neither Mother nor Father appeared for the initial hearing, and the trial court removed L.P., who was still hospitalized, from Mother's and Father's custody.

[5]  Mother and Father appeared at a continued initial hearing in September 2012, and L.P. was placed in relative care. Mother and Father did not appear at the fact-finding hearing in November 2012. Father's counsel indicated that he was incarcerated for domestic violence, domestic battery, and battery with injury, and Mother's counsel indicated that Father had beaten Mother badly and that she was unable to attend the hearing. The trial court found that L.P. was a CHINS and continued L.P.'s placement in relative care.

[6]  Mother and Father did not appear at the dispositional hearing in November 2012. The trial court ordered Mother not to use illegal controlled substances, participate in home-based counseling, complete a substance abuse assessment and any treatment recommendations, submit to random drug screens, and engage in a domestic violence intake and follow any recommendations.

[7]     In December 2012, Mother was arrested for operating a vehicle while intoxicated and had two Klonopin pills in her possession that were not prescribed to her. She was released from jail on February 7, 2013. At a review hearing on February 22, 2013, Mother and Father did not appear.

[8]     Mother was referred for home-based counseling through New Hope of Indiana. In February 2013, the case manager did an intake appointment with Mother and began various services. Although Mother initially participated, the case manager closed the referral in early April 2013 after Mother failed to appear at several appointments. The case manager received another referral later in April 2013, and she met with Mother a couple of times. However, the referral was closed due to Mother's later incarceration. Mother also told a therapist that she was looking for housing and would schedule an appointment when she was "situated." Tr. p. 9. However, Mother never contacted the therapist again.

[9]     At another review hearing on April 26, 2013, Mother appeared, but the trial court noted that she had not been participating in services. Mother had only seen L.P. six times since she was born. Mother was arrested in May 2013 and spent nine days in jail. Mother was again incarcerated from June to November 2013 due to a probation violation. At a permanency hearing in August 2013, Mother and Father did not appear due to their incarcerations. The trial court changed the plan from reunification to adoption. DCS then filed a petition to terminate Mother's and Father's parental rights. At a November 2013 periodic hearing, Mother and Father again did not appear due to their incarcerations.

[10] When Mother was released from incarceration, the termination proceedings were dismissed, and she was again referred for services. Although she visited L.P., Mother made minimal progress on her services. At another periodic hearing in July 2014, Mother appeared and the trial court noted:

> Mother has been unsuccessfully discharged from all services except home based case management. Mother had a positive screen. Mother was recommended for IOP and was discharged for not attending. The [home based case manager] has to take mother to every visit with the child. Mother's older son is a registered sex offender and mother continues to take the child around her son after being told that no contact is allowed. Father was released from incarceration and has not had any contact with DCS. DCS requests that mother's parenting time be reduced to one time per week.

[11] Petitioner's Ex. 13 p. 65. The trial court ordered that Mother's supervised visitations with L.P. be reduced to once a week for three hours.

[12] In July 2014, DCS filed a petition to terminate Mother's parental rights to L.P. Father consented to the termination of his parental rights and was dismissed from the action. After an evidentiary hearing, the trial court entered findings of fact and conclusions thereon granting DCS's petition to terminate Mother's parental rights. Mother now appeals.

## Analysis

[13] Mother challenges the termination of her parental rights to L.P. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re*

*I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). "Indeed the parent-child relationship is 'one of the most valued relationships in our culture.'" *Id.* (quoting *Neal v. DeKalb County Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). We recognize of course that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities." *Id.* (quoting *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

[14] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *Id.* We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)). Here, the trial court entered findings of fact and conclusions thereon in granting DCS's petition to terminate Mother's parental rights. When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the

findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[15] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (B)  that one (1) of the following is true:
>
>    (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
>    (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
>    (iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C)  that termination is in the best interests of the child; and
>
> (D)  that there is a satisfactory plan for the care and treatment of the child.

The State must establish these allegations by clear and convincing evidence.

*Egly v. Blackford County Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1234 (Ind. 1992).

## I. Remedy of Conditions Resulting in Removal

[16] Mother first argues that the trial court's conclusion that the conditions that resulted in L.P.'s removal or the reasons for placement outside of her home will

not be remedied is clearly erroneous.[1]  In making this determination, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration evidence of changed conditions.  *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*.  However, the trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child."  *Id.*  The trial court can properly consider the services that the State offered to the parent and the parent's response to those services.  *In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*.

[17]   Mother argues that she had "essentially resolved all of the original reasons for L.P.'s removal."  Appellant's Br. p. 23.  According to Mother, in the six months prior to the termination hearing, her only "misstep was her admitted use of marijuana."  *Id.* at 25.  In conjunction with this argument, Mother challenges several of the trial court's findings of fact.

---

[1] Mother also argues that the trial court's conclusion that the continuation of the parent-child relationship poses a threat to L.P.'s well-being is clearly erroneous.  Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive.  Subsection (b)(2)(B)(iii), which concerns repeated CHINS adjudications, is inapplicable here.  Consequently, DCS was required to demonstrate by clear and convincing evidence a reasonable probability that *either*: (1) the conditions that resulted in L.P.'s removal or the reasons for placement outside the home of the parents will not be remedied, *or* (2) the continuation of the parent-child relationship poses a threat to L.P.'s well-being.  The trial court found a reasonable probability that the conditions that resulted in L.P.'s removal and placement outside Mother's home would not be remedied, and there is sufficient evidence in the record to support the trial court's conclusion.  Thus, we need not determine whether there was a reasonable probability that the continuation of the parent-child relationship poses a threat to L.P.'s well-being.  *See, e.g., Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143, 148 n.5 (Ind. 2005); *In re T.F.,* 743 N.E.2d 766, 774 (Ind. Ct. App. 2001), *trans. denied*.

[18]   In Finding No. 9, the trial court found: "[Mother] became incarcerated, due to driving while intoxicated on someone else's Klonopin, in December of 2012, until February of 2013." App. p. 11. Mother argues that the evidence demonstrated she was arrested for driving while intoxicated and had Klonopin in her pocket, but there was no evidence that she was intoxicated on Klonopin. Mother is technically correct regarding this finding. However, regardless of what Mother was intoxicated on, the fact remains that she was arrested for driving while intoxicated and also had Klonopin, for which she did not have a prescription, in her pocket. We conclude that any error in the finding would not have affected the outcome in this proceeding.

[19]   Mother next challenges Finding No. 11, in which the trial court found: "During the CHINS case, there were at least three referrals made for individual home based therapy. [Mother] failed to participate and successfully complete therapy." *Id.* at 12. Mother argues that this finding is erroneous because there was "confusion as to whether [DCS] actually made all referrals indicated, whether they made Mother aware of the referrals, and who was supposed to provide the therapy." Appellant's Br. p. 20. However, there was evidence in the record that Mother had at least three referrals for home-based therapy and that Mother did not complete any such therapy. *See* Tr. p. 163. We cannot say that the trial court's finding is clearly erroneous.

[20]   Mother argues that Finding No. 13, Finding No. 14, Finding No. 15, and Finding No. 17 are clearly erroneous. Those findings provided:

13.     At the time of trial in this matter, adequate income and independent stable housing were still issues to be addressed.

14.     There was conflicting testimony as to whether [Mother] had employment, and she has not tendered vouchers to show her income.

15.     [Mother] is at best under employed, cleaning up construction part time. Although she testified she brought home almost $300.00 per week, she also testified she may work two hours one week and fifteen the next.

\* \* \* \* \*

17.     [Mother's] criminal history presents a barrier to employment.

App. p. 12.

[21]    Mother argues that her housing with her sister was appropriate and that she had been working part-time. She also argues that she was not "under employed" and that her criminal history may have been an obstacle but not a "barrier" to employment. Mother's argument is merely a request that we reweigh the evidence, which we cannot do. At the time of the evidentiary hearing in December 2014, forty-one-year-old Mother was living with her sister and her sister's boyfriend, and there was not room for L.P. there. She had previously lived there and had been asked to leave. During the CHINS and termination proceedings, she had lived with various friends and relatives when not

incarcerated. Although Mother planned on getting her own housing within the month, she had not visited any apartment complexes and had not applied for housing anywhere. Mother had been looking for full-time employment for a year. She claimed that she was employed part-time and earned $200 to $300 per week. However, she did not provide any paycheck stubs, and another witness testified that Mother was not employed. The evidence demonstrated that Mother never obtained housing that was appropriate for L.P. Further, Mother admitted that she was not able to take care of L.P. at that time because was not making enough money "to take care of me let alone a baby." Tr. p. 67. The trial court's findings are not clearly erroneous.

[22] Next, Mother challenges Finding No. 26, which provides: "Although the plan had been changed to adoption, services for [Mother] were re-referred once more in 2014 after her release from jail." App. p. 13. Mother argues that she was released from incarceration in November 2013 and that DCS did not give her services until ordered by the trial court. The evidence shows that Mother was getting some services prior to the trial court's order and that all services had been re-referred by March 2014. However, the evidence shows that Mother still failed to comply with most of those services and that another petition to terminate her parental rights was filed in July 2014. The trial court's finding is not clearly erroneous.

[23] Finally, Mother argues that the following conclusion is clearly erroneous. The trial court found:

There is a reasonable probability that the conditions that resulted in [L.P.'s] removal and continued placement outside the home will not be remedied by her mother. [Mother] has not successfully completed any service and has not remedied instability, substance abuse, domestic violence or mental health issues from several referrals made when she was not incarcerated, including final chance referrals in 2014 after the permanency plan was changed.

*Id.* at 13. Mother argues that the language in the trial court's conclusion "does not track" the relevant statutory language. Indiana Code Section 31-35-2-4(b)(2)(B)(i) provides requires DCS to demonstrate that "[t]here is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied." Mother argues that the word "continued" is not present in the statute. According to Mother, this alleged misstatement allowed the trial court to consider "matters beyond the original reasons for removal." Appellant's Br. p. 23.

[24] L.P. was originally removed from Mother's care because, at the time of L.P.'s birth, both L.P. and Mother tested positive for benzodiazepines, and Mother admitted to taking Ativan, Ambien, and Nyquil while pregnant. Mother also did not have stable housing. During the CHINS and termination proceedings, Mother was incarcerated several times. After her November 2013 release from prison, she began participating in services and made some minor progress. Mother secured her driver's license and a vehicle, but she did not have stable housing or employment suitable to support herself or L.P. Mother participated in a substance abuse assessment at Gallahue in May 2014. Mother admitted

that she had used marijuana two days prior to the assessment and that she had a history of opiate and benzodiazepine use. It was recommended that Mother attend "dual diagnosis intensive outpatient treatment," but Mother did not attend the treatment. Tr. p. 109. Mother also admitted to using marijuana in July 2014. She also did not complete home-based services, domestic violence counseling, or any other services that were ordered. She never progressed beyond supervised visitation, and the trial court ultimately reduced supervised visitation from twice a week to once a week. Mother merely offers excuses that "unfortunate events," such as her incarceration, lack of transportation, injuries from a car accident, unemployment, lack of a driver's license, and lack of therapy have hindered her progress during the proceedings. Appellant's Br. p. 24.

[25] Although we acknowledge that Mother made some progress in the services, she was unable to successfully complete the services offered. Mother's substance abuse issues and lack of stable housing were still issues at the time of the termination hearing. Mother's argument that she had resolved all of the original reasons for the removal is merely a request that we reweigh the evidence, which we cannot do. The trial court's conclusion is not clearly erroneous.

## II. Best Interests

[26] Next, Mother challenges the trial court's conclusion that termination is in L.P.'s best interests. In determining what is in the best interests of the child, the trial court is required to look at the totality of the evidence. *D.D.*, 804 N.E.2d at

267. In doing so, the trial court must subordinate the interests of the parents to those of the child involved. *Id.*

[27] According to Mother, she had demonstrated an ability to parent L.P. and meet her needs and that she has worked very hard toward meeting her goals. The trial court acknowledged that Mother and L.P. are bonded and that visitations went well. However, the trial court noted that L.P. needed to be adopted into a stable and permanent home where her needs would be safely met. Despite some progress, Mother remains unable to care for L.P., provide her proper housing, or meet L.P.'s needs. Both the DCS case manager and the guardian ad litem recommended termination of Mother's parental rights. L.P. is doing well with her foster family, and the trial court properly subordinated Mother's interests to L.P.'s interests. The trial court's conclusion regarding L.P.'s best interests is not clearly erroneous.

## Conclusion

[28] The trial court's termination of Mother's parental rights to L.P. is not clearly erroneous. We affirm.

[29] Affirmed.

Kirsch, J., and Najam, J., concur.