## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Oct 14 2015, 8:51 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Anthony L. Holton
Wilkinson, Goeller, Modesitt,
Wilkinson & Drummy, LLP
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of E.B. (minor child), and,

R.K. (Mother),

*Appellant-Respondent*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

October 14, 2015

Court of Appeals Case No. 84A01-1501-JT-2

Appeal from the Vigo Circuit Court

The Honorable David R. Bolk, Judge, and the Honorable Daniel W. Kelly, Magistrate

Trial Court Cause No. 84C01-1402-JT-105

**Mathias, Judge.**

[1] The Vigo Circuit Court terminated R.K.'s ("Mother") parental rights to her minor child, E.B. Mother appeals and argues that trial court's judgment terminating her parental rights is not supported by sufficient evidence.

[2] We affirm.

## Facts and Procedural History

[3] E.B. was born on August 6, 2012. She was removed from Mother's care three days later because Mother has mental health issues and did not appear to be capable of caring for a newborn infant. The hospital staff reported that Mother was more concerned with her own needs and meals instead of focusing on E.B.'s needs. Also, a petition to terminate Mother's rights to her eighteen-month-old child was pending in Hamilton County.[1]

[4] E.B. was adjudicated a CHINS in January 2013. Mother admitted that she had medical issues that prevented her from adequately caring for E.B. Mother was ordered to participate in numerous services including psychiatric services and counseling services, completion of a parenting assessment, and visitation with E.B.

[5] Mother suffers from chronic depression and anxiety disorder and has been diagnosed with borderline personality disorder. As a result, she struggles to

---

[1] Mother's parental rights to that child were terminated on December 4, 2013. Mother appealed the termination of her parental rights, and on July 30, 2014, our court affirmed the Hamilton Circuit Court's order. *See In re the Termination of the Parent-Child Relationship of S.E.*, 15 N.E.3d 37 (Ind. Ct. App. 2014), *trans. denied*.

manage her stress and regulate her emotions. Mother becomes easily overwhelmed and anxious and exhibits physical symptoms as a result. She also has suicidal ideations, which most recently resulted in four separate emergency detentions at the Hamilton Center in Terre Haute.

[6] Mother's visitation with E.B. never progressed beyond supervised visitation during these proceedings. During visitations, Mother often played on her phone and focused on herself rather than on E.B. She struggled with basic parenting skills, and often the case manager would have to intervene. Mother failed to understand toddler behaviors or E.B.'s developmental needs. Mother made little progress in visitation and frequently failed to apply what she had learned at the previous visit.

[7] Mother completed a parenting group through the Hamilton Center but was not able to apply the parenting skills she was taught. Mother also inconsistently participated in Dialectical Behavioral Therapy. In June 2014, Mother underwent a psychological evaluation, which was compared to the evaluation she completed in 2012. Mother's psychologist concluded that Mother had actually declined in functioning. Tr. Vol. 1 p. 26. She also recommended that Mother receive inpatient mental health treatment, but Mother refused to follow the recommendation.

[8] On February 4, 2014, the Department of Child Services ("DCS") filed a petition to terminate Mother's parental rights.[2] Hearings were held on the petition on July 21, 22, 28, and August 1, 2014.

[9] Mother's psychiatrist, Dr. Mahmood, testified that Mother requires significant support to deal with daily stressors just to care for herself and would require more support than she currently has to be able to care for a child. Mother's psychologist agreed that Mother struggles to regulate her emotions when confronted with the frustrations of daily life and she becomes easily overwhelmed.

[10] Janet Baker, who supervised Mother's visitations with E.B., testified that Mother's visitations were decreased because the three and one-half hour visits seemed too long for Mother to handle. Mother's behavior in visitation was not consistent with the proper parenting of a toddler. Also, service providers and the court appointed special advocate ("CASA") all testified that termination of Mother's parental rights was in E.B.'s best interests.

[11] The trial court concluded that Mother suffers from "significant mental health problems which would impair her ability to provide a stable, safe and secure home for" E.B. Appellant's App. p. 13. The court also determined that Mother "did not demonstrate any improvements in her functional behavior in the two years that she was involved in services." *Id.* at 14. For these reasons, on

---

[2] E.B.'s father's parental rights were also terminated in these proceedings.

December 5, 2014, the trial court issued an order terminating Mother's parental rights to E.B. Mother now appeals.

## Standard of Review

[12]    We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. *Id.* We consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.* Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which "leaves us with a definite and firm conviction that a mistake has been made." *J.M. v. Marion Cnty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

## Discussion and Decision

[13]    "The purpose of terminating parental rights is not to punish parents but to protect their children. Although parental rights have a constitutional dimension, the law allows for their termination when parties are unable or unwilling to meet their responsibility as parents." *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004) (citation omitted). Indeed, parental interests "must be subordinated

to the child's interests" in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind. 2009).

[14]   Indiana Code section 31-35-2-4(b) provides that a petition to terminate parental rights must meet the following relevant requirements:

>   (2) The petition must allege:
>
>   (B) that one (1) of the following is true:
>
>>   (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>>   (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>>   (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
>   (C) that termination is in the best interests of the child; and
>
>   (D) that there is a satisfactory plan for the care and treatment of the child.

[15]   DCS must prove "each and every element" by clear and convincing evidence. *G.Y.*, 904 N.E.2d at 1261; Ind. Code § 31-37-14-2. Clear and convincing evidence need not establish that the continued custody of the parents is wholly inadequate for the child's very survival. *Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). Rather, it is sufficient to show by clear and convincing evidence that the child's emotional development and physical development are put at risk by the parent's custody. *Id.* If the court

finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[16] Mother argues that DCS failed to prove by clear and convincing evidence that "there is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied" or that "there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child." *See* I.C. § 31-35-2-4(b)(2)(B). However, section 31-35-2-4(b)(2)(B) is written in the disjunctive; therefore, the trial court was only required to find that only one prong of subsection 2(b)(2)(B) was established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010).

[17] Because the trial court found that DCS presented clear and convincing evidence to prove both prongs of subsection 2(b)(2)(B), we will first consider whether a reasonable probability exists that the conditions that led to E.B.'s removal will not be remedied. To do so, we apply the following two-step analysis:

> First, we identify the conditions that led to removal; and second, we "determine whether there is a reasonable probability that those conditions will not be remedied." In the second step, the trial court must judge a parent's fitness "as of the time of the termination proceeding, taking into consideration evidence of changed conditions,"—balancing a parent's recent improvements against "habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation." We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. Requiring trial

courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

*In re E.M.*, 4 N.E.3d 636, 642-43 (Ind. 2014) (internal citations and footnote omitted).

[18] E.B. was removed from Mother's care because Mother has significant mental health issues and did not appear to be capable of caring for a newborn infant. Mother was more concerned with her own needs and meals instead of focusing on E.B.'s needs, and the child was removed from Mother's care three days after her birth.

[19] Mother suffers from chronic depression and anxiety disorder. She also has been diagnosed with borderline personality disorder.

[20] At the termination hearing, Mother's psychiatrist testified that Mother benefits from taking her medications and benefits from therapy, but that she needs significant support to "cope with her activities of daily living." Tr. Vol. 1 pp. 7-8. Dr. Mahmood stated that Mother "gets significantly anxious and overwhelmed without support" and exhibits physical symptoms such as chest tightness and chest pain. *Id*. at 8. Her psychologist agreed that Mother struggles with daily living and managing stress. *Id.* at 23. Mother is resistant to implementing skills discussed in therapy in her daily life. *Id*. at 30. Also, between February 2014 and July 2014, Mother was placed in emergency

detention at the Hamilton Center on four separate occasions for reports of suicidal ideation.

[21] Mother's case manager, who supervised visits between Mother and E.B., testified that Mother lacks basic parenting knowledge and does not understand developmental stages and toddler behaviors. The case manager also expressed concern that Mother was not focused on E.B. during visitation but on herself and her own needs. *Id.* at 106. Mother's visitation with E.B. was reduced because Mother complained that the length of the visit was too much for her to handle. *Id.* at 110. Although the case manager observed at the beginning of the visit that Mother had become more attentive and watchful, the case manager still could not recommend unsupervised visitation because toward the end of the visit, Mother's attention would switch from E.B. to herself. *Id.* at 112.

[22] Mother's family case manager testified that Mother was not able to apply the skills taught in her parenting group on a consistent basis. She noted that Mother expressed more concern for herself and was unable to focus on caring for E.B. Tr. Vol. 3 p. 28. The case manager also observed that Mother lacks basic parenting skills and "continues to become very easily overwhelmed with [E.B.] and to care for E.B.]" *Id.* at 74, 38.

[23] Although Mother complies with medication management and participates in therapy and DCS-provided services, she has not benefited from those services. She cannot cope with daily living or take care of her own needs for any length of time as demonstrated in part by four emergency detentions for suicidal

thoughts in the six months preceding the termination hearings. Mother's psychiatrist, therapist, and DCS service providers all agreed that Mother cannot cope with daily living without significant support. Importantly, since E.B.'s birth and throughout the CHINS and termination proceedings, Mother has consistently focused on her own needs rather than those of E.B., and she does not have the basic parenting skills necessary to take care of a child.[3] For all of these reasons, we conclude that DCS proved by clear and convincing evidence that a reasonable probability exists that the conditions that led to E.B.'s removal will not be remedied. We therefore affirm the trial court's order terminating Mother's parental rights to E.B.[4]

Affirmed.

Baker, J., and Bailey, J., concur.

---

[3] Mother correctly observes that parental rights cannot be terminated on the sole basis of mental illness. *Dull v. Delaware Cnty. Dep't of Public Welfare*, 521 N.E.2d 972, 976 (Ind. Ct. App. 1988). However, where the parent is incapable of fulfilling her legal obligation to care for her child, then mental illness may be considered. *Egly v. Blackford Cnty. DPW*, 592 N.E.2d 1232, 1234 (Ind. 1992). As we observed in our discussion of the evidence presented at the termination hearing, Mother's child was not removed because of her illness but because she is unable to benefit from therapy and implement strategies for dealing with her mental illness.

[4] Therefore, we do not address Mother's argument that DCS also failed to prove that continuation of the parent-child relationship poses a threat to E.B.'s well-being. In addition, we note that Mother did not challenge the trial court's finding that termination of Mother's parental rights is in E.B.'s best interests. We reiterate that DCS case managers and the CASA all agreed that termination of Mother's parental rights was in the child's best interests and that E.B. is doing well in her foster care, pre-adoptive placement. *See A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013) (stating that a recommendation by the case manager or child advocate to terminate parental rights is sufficient to show by clear and convincing evidence that termination is in the child's best interests), *trans. denied.*