# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Mar 31 2016, 8:38 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jill M. Acklin
McGrath, LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:

Mi.H. and Ma.H. (Minor Children), Children in Need of Services

and

M.H. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Plaintiff*

March 31, 2016

Court of Appeals Case No.
49A05-1509-JC-1280

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

Trial Court Cause No.
49D09-1504-JC-1463
49D09-1504-JC-1464

**Baker, Judge.**

[1] M.H. (Father) appeals the juvenile court's order declaring his two children, Mi.H. and Ma.H., to be children in need of services (CHINS). He argues that there is insufficient evidence supporting the CHINS adjudication and the dispositional order. Finding the evidence sufficient, we affirm.

## Facts

[2] Mi.H. was born in June 2006 and Ma.H. was born in September 2007 to Father and the children's mother.[1] Father has another child, B.H., with a different mother, S.F. In March 2014, B.H. was declared a CHINS because of S.F.'s substance abuse and Father's failure to protect B.H. Throughout B.H.'s CHINS case, Father engaged in domestic violence with S.F., repeatedly failed to submit to required drug screens, and tested positive for methamphetamine on at least one occasion. On June 25, 2015, the Department of Child Services (DCS) filed a petition to terminate the parent-child relationship between B.H. and Father.

[3] On April 29, 2015, DCS removed Mi.H. and Ma.H. from Father's custody and placed them in relative care. On May 1, 2015, DCS filed a petition alleging that Mi.H. and Ma.H. were CHINS because of Father's substance abuse.[2] As a condition of Father exercising parenting time with the children, the juvenile

---

[1] Their mother has not appealed the CHINS adjudication.

[2] The CHINS petition also contained allegations regarding the children's mother.

court ordered that he participate in random drug screens. Father did not make himself available for the drug screens, however, and as of June 29, 2015, no drug screens had been successfully administered.

[4] At the time of the factfinding hearing, Father had been working with a home-based therapist since November 2014. The therapist testified that in the weeks leading up to the factfinding hearing, Father became less consistent with his appointments. She had "concerns about Father's decision-making and interpersonal relationship skills . . . and believes that his poor decision-making skills impede his ability to parent his children. She described his home and life as 'chaos,' with multiple police and CPS calls to his home." Appellant's App. p. 90.

[5] S.F., the mother of Father's other child, continued to test positive for illegal substances throughout B.H.'s CHINS case. Father admitted that he had found drugs in his home where S.F. had been sleeping, that he knew she had been prostituting from his home, and that he believed she had stolen firearms and medications from his home. Notwithstanding these ongoing issues, however, Father repeatedly allowed her to babysit Mi.H. and Ma.H. and remain in his home. After S.F. alleged that a domestic violence incident had taken place in April 2015, the juvenile court entered a no contact order, which Father violated on at least two occasions.

[6] At the time of the factfinding hearing, Father was on probation for possession of a controlled substance. In B.H.'s CHINS case, Father told the juvenile court

that he had a prescription for the drugs for which he was arrested. But in the instant CHINS case, he claimed that the conviction was the result of an employee leaving drugs in his vehicle. Moreover, the juvenile court found Father's answers regarding police calls to his home to be dishonest: "Father testified that the police had been called to his residence 3-4 times in the last year; however, further testimony demonstrated that the police have been to Father's residence 9 times in the last year[.]" *Id.* at 91.

[7] At the June 30, 2015, factfinding, DCS orally moved to have the pleadings, including the CHINS petition, conform to the evidence presented at trial, and the juvenile court granted the motion.[3] The juvenile court issued its order adjudicating the children to be CHINS on July 6, 2015. On August 6, 2015, the juvenile court held a dispositional hearing and issued a dispositional order the same day. The dispositional order required Father to participate with homebased case management, random drug screens, and a substance abuse assessment. Father now appeals.

---

[3] Father states that as a result of this order, this case presents "a unique procedural posture." Appellant's Br. p. 9. But he does not argue that the juvenile court erred by granting DCS's motion, nor do we find any compelling reason to conclude there was error in this regard.

# Discussion and Decision

## I. Standard of Review

[8] Father argues that there is insufficient evidence supporting the CHINS adjudications. Our Supreme Court has explained the nature of a CHINS proceeding and appellate review of a CHINS finding as follows:

> A CHINS proceeding is a civil action; thus, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.R.,* 919 N.E.2d 102, 105 (Ind. 2010). We neither reweigh the evidence nor judge the credibility of the witnesses. *Egly v. Blackford County Dep't of Pub. Welfare,* 592 N.E.2d 1232, 1235 (Ind. 1992). We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only upon a showing that the decision of the trial court was clearly erroneous. *Id.*

> There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS. DCS must first prove the child is under the age of eighteen; DCS must prove one of eleven different statutory circumstances exist that would make the child a CHINS; and finally, in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court. *In re N.E.,* 919 N.E.2d at 105.

*In re K.D.,* 962 N.E.2d 1249, 1253–54 (Ind. 2012) (footnote omitted).

[9] Here, DCS alleged that the children were CHINS pursuant to Indiana Code section 31–34–1–1, which provides as follows:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

   (A) the child is not receiving; and

   (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[10] Our Supreme Court has interpreted this provision to require "three basic elements: that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014).

## II.  Sufficiency

[11] Initially, we note that Father's sole argument on appeal appears to be that there are insufficient findings of fact supporting the dispositional order.[4]  Indiana

---

[4] He does not contest any of the specific services included in the dispositional order.

Code section 31-34-19-10(a) sets forth the requirements for findings that must accompany dispositional orders:

> The juvenile court shall accompany the court's dispositional decree with written findings and conclusions upon the record concerning the following:
>
> (1)      The needs of the child for care, treatment, rehabilitation, or placement.
>
> (2)      The need for participation by the parent, guardian, or custodian in the plan of care for the child.
>
> (3)      Efforts made, if the child is a child in need of services, to:
>
> > (A)      prevent the child's removal from; or
> > (B)      reunite the child with;
>
> > the child's parent, guardian, or custodian in accordance with federal law.
>
> (4)      Family services that were offered and provided to:
>
> > (A)      a child in need of services; or
> > (B)      the child's parent, guardian, or custodian;
>
> > in accordance with federal law.
>
> (5)      The court's reasons for the disposition.
>
> (6)      Whether the child is a dual status child under IC 31-41.

Father does not argue that the dispositional order failed to comply with these statutory requirements. Instead, he seems to argue that the dispositional order must contain findings of fact supporting the CHINS adjudication. That is simply not the case. Nowhere in the statute are such findings required to be part of a dispositional decree. Consequently, this argument must fail.

[12]    Giving Father the benefit of the doubt, we will infer that he intended to argue that the findings and evidence supporting the CHINS adjudication are insufficient.[5] As noted above, DCS presented the following evidence at the factfinding hearing:

- Father has a history with DCS, including a pending termination of parental rights case regarding another child.
- Although Father was ordered to comply with random drug screens at the initial hearing in this case, he had failed to make himself available to do so even once in the two months leading up to the factfinding hearing. In B.H.'s CHINS case, he repeatedly failed to comply with drug screens and tested positive for methamphetamine on at least one occasion.
- Father's homebased therapist testified that she has concerns about his decisionmaking skills and that his home life is extremely chaotic. She also stated that Father was becoming more inconsistent in his participation with her services.
- Father maintained a relationship with S.F., the mother of his other child. S.F. babysat for Mi.H. and Ma.H. and even stayed in the home at times, notwithstanding her ongoing drug use, prostituting out of the home, and suspected thefts from the home.
- In the year leading up to the factfinding hearing, the police had been called out to Father's home on nine different occasions.
- Father exhibited dishonesty to the juvenile court regarding both his prior criminal history and the number of police visits to his home.
- S.F. alleged that she and Father had engaged in an act of domestic violence. The court then put a no contact order in place, which Father admittedly violated on at least two occasions.

---

[5] Father argues that "it is impossible to know the juvenile court's reasoning in issuing the decision that it did." Appellant's Br. p. 10. If the "decision" he refers to is the dispositional order, as noted above, he does not argue that the order failed to meet the relevant statutory requirements. And if the "decision" is the CHINS adjudication, the juvenile court issued a lengthy and detailed order explaining its reasoning in full.

This evidence establishes a troubling pattern of behavior on Father's part. It reveals that he ignores court orders, exhibits dishonesty, and chooses to place his children in the care of someone who he knows has ongoing drug abuse issues and was prostituting herself out of his home. Their lives are chaotic and frequently interrupted by police calls and DCS investigations. We find that this evidence is sufficient to support the juvenile court's conclusion that the children are CHINS.

[13] The judgment of the juvenile court is affirmed.

May, J., and Brown, J., concur.