Walter EGLY and Diana Egly,
Appellants, (Respondents
Below),

v.

BLACKFORD COUNTY DEPARTMENT
OF PUBLIC WELFARE, Appellee.
(Petitioner Below).

No. 05S02–9206–CV–431.

Supreme Court of Indiana.

June 4, 1992.

Thomas A. Brown, Hartford City, for
appellants, Walter Egly and Diana Egly.

William E. Ervin, Hartford City, for ap-
pellee, Blackford County Dept. of Public
Welfare.

Mary Jane Norman, Derelle Watson–Du-
vall, Indianapolis, for amicus curiae, Mar-
ion County Dept. of Public Welfare.

KRAHULIK, Justice.

Blackford County Department of Public Welfare (Petitioner–Appellee below) ("Welfare Department") seeks transfer after the Court of Appeals reversed the trial court judgment terminating the parental rights of Walter and Diana Egly (Respondents–Appellants below) (the "Eglys"). *Egly v. Blackford County Welfare Dept.* (1991), Ind.App., 575 N.E.2d 312. We grant transfer to address the proper standard to be applied in actions to terminate parental rights.

The facts pertinent to the petition are as set out in the opinion of the Court of Appeals:

Linda Miller ... a case worker with the Department, visited the Eglys' trailer home and discovered holes in the floor of the trailer, no water, that the furnace did not work properly, and a kerosene heater spewing fumes throughout the house.

As a result of this investigation, Walter Jr. and Matthew [the Egly's children] were temporarily removed from the home and made wards of the State. Deborah Slater (Slater), a Department caseworker, began to work with Walter and Diana to help them establish a better home environment for the children. Slater counseled the Eglys regarding budgeting, homemaking, supervised visitation and provided transportation for the Eglys to and from the Grant County Developmental Center so they could attend parenting classes. The Eglys entered into a contract for services on December 15, 1987, and before Christmas of 1987, Walter Jr. and Matthew, were returned to the Egly home.

During their removal from the home and in subsequent follow-up visits, Department workers observed problems with the Egly children. Walter Jr., who was nearly four years old in December of 1987, had not been toilet-trained. Matthew, who was about nine months old at the time, was usually confined to a crib during Department visits and had not sufficiently developed his motor skills.

Counselors also concluded that both children were socially deprived. Walter Jr., who was mildly retarded, had difficulty learning and had a speech problem in which he repeated everything he heard.

The two children were again temporarily removed from the home and placed in foster care. While in foster care, Walter Jr. became toilet-trained in two weeks. Walter Jr.'s communication problems improved and both became, according to Department workers, more socially active.

Although the Department continued to work with the Eglys to improve their parenting skills, caseworkers eventually concluded that Diana, who had an IQ of fifty-seven, and Walter, who had an IQ of seventy-three, did not have the mental capability to comprehend and retain the information given them. Kenneth Joy, a psychologist who examined Walter and Diana, determined that Walter lacked the desire to be a more successful parent and was more motivated by economic concerns. Joy diagnosed Walter as having a personality disorder which made him resistant to change, which problem could only be overcome through long-term inpatient treatment.

The Eglys entered into a second contract for services with the Department on June 29, 1988, and another one on February 13, 1989. Two months into the third and final contract, the Department petitioned the Blackford Circuit Court to terminate the Eglys' parental rights over Walter Jr., Matthew, and Joseph Egly. Following a trial held on October 26 and 27, 1989, the court granted the Department's petition.

*Id.* at 312–13.

The Eglys appealed.[1] The Court of Appeals reversed the termination. Citing *Matter of Miedl* (1981), Ind., 425 N.E.2d 137, 141, the court held that parental rights may be terminated only where there is clear and convincing evidence that the continued custody of the parents is wholly inadequate for the child's very survival.

---

1. Mr. Egly also agreed to the termination of his parental rights with respect to Joseph Egly, his son from a prior marriage. This agreed termination is not part of this appeal.

575 N.E.2d at 314. The court opined that the findings of the trial court were "not of a serious enough nature to warrant termination of the Egly's parental rights over their children" and, thus, the Welfare Department had not established that the termination was in the best interests of the children. *Id.* The Welfare Department now seeks transfer on the grounds that the Court of Appeals applied an incorrect standard for termination of parental rights. We agree.

█ When a welfare department seeks to terminate parental rights, the department must plead and prove that:

(1) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(2) there is a reasonable probability that:

(A) the conditions that resulted in the child's removal will not be remedied; or

(B) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(3) termination is in the best interests of the child; and

(4) there is a satisfactory plan for the care and treatment of the child.

*Ind.Code* § 31–6–5–4(c) (1990). These allegations must be established by clear and convincing evidence. *Ind.Code* § 31–6–7–13(a).

The Court of Appeals focused on a single sentence found in the *Miedl* decision which opined that children "are taken [from their parent's custody] because the present place in the custody of their parents is wholly inadequate for their very survival," 425 N.E.2d at 141, and then inserted that statement as a requirement of *Ind.Code* § 31–6–5–4(c)(3) for establishing that the termination is in the best interests of the children. To the extent the Court of Appeals relied on that sentence as a standard, it was relying on *dicta. Miedl* did not append an additional requirement onto the statute. As this Court noted in *Herman v. State* (1856), 8 Ind. 545, 553:

dicta ... are not necessarily law—are, in fact, generally unconsidered first impressions which, all legal experience proves,

are thrown out by all judges in giving opinions as habitually and thoughtlessly as violations of the constitution are perpetrated by the legislature in enacting laws, and infinitely more excusably. Scarcely an elaborate opinion is written not containing them. This the profession will understand, and hence, are not misled by them if erroneous.

Our reading of *Miedl* convinces us that this singular sentence, written in the context of the alleged failure of a welfare department to have a written plan for the future of the children, was not intended to preclude the termination of parental rights under the facts presented here.

█ The Eglys argue that their parental rights were terminated because of their intellect. Mental retardation of the parents, standing alone, is not a proper ground for terminating parental rights. *Ind.Code* § 31–6–5–4(c); *see also Dull v. Delaware County Department of Public Welfare* (1988), Ind.App., 521 N.E.2d 972. Where, however, the parents are incapable of or unwilling to fulfill their legal obligations in caring for their children, then mental illness may be considered. *In re Wardship of B.C.* (1982), Ind., 441 N.E.2d 208, 211.

█ The purpose of terminating parental rights is not to punish parents, but to protect the children. *Lassiter v. Department of Social Services* (1981), 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640. Although parental rights are of a constitutional dimension, the law allows for the termination of those rights when parents are unable or unwilling to meet their responsibilities as parents. This includes situations not only where the child is in immediate danger of losing his life, but also where the child's emotional and physical development are threatened. *See, e.g. In re Y.D.R.* (1991), Ind.App., 567 N.E.2d 872; *Page v. Greene County Dept. of Pub. Welf.* (1991), Ind.App., 564 N.E.2d 956.

█ The trial court made findings of fact and conclusions of law following the bench trial. Where the trial court has heard the evidence and has had the opportunity to judge the credibility of witnesses,

we will not set aside the judgment unless it is clearly erroneous. *In re Wardship of B.C.*, 441 N.E.2d at 211. We do not reweigh the evidence or determine the credibility of witnesses, but consider only the evidence that supports the judgment and the reasonable inferences to be drawn from the evidence. *Id.* The Eglys do not challenge the findings of fact made by the trial court, but only whether the findings support the conclusions based on those facts. Thus we determine whether the findings support those conclusions. We reverse only upon a showing of "clear error"—that which leaves us with a definite and firm conviction that a mistake has been made.

■ Using this standard, we agree with Judge Baker in his dissent that there is clear and convincing evidence to support the termination of the Eglys' parental rights. At the time the Egly children were first taken from the home, Walter, Jr., almost four years old, was not yet toilet trained and suffered from a speech problem in that he repeated everything he heard. The younger child, Matthew, age nine months, had few mobility skills and was unable to crawl. Even after parental counseling, Matthew was always found in his crib when the social worker visited the home. Once removed from the home and placed in a foster home, Walter, Jr., was toilet trained within two weeks, Matthew learned to crawl, and both children showed marked improvement in communication skills, education levels, and interaction with others. There was testimony from the child welfare case worker that the Eglys were not capable of providing a nurturing, stable environment for the minor children. After 16 months of counseling the Eglys, the only improvement seen by a social worker who saw the Eglys twice a week was in the cleanliness of the home. There was no change in the interaction between parents and children observed by the social workers, although the children progressed quickly to age and intellect appropriate skills while away from the parents. A psychologist who counseled with the Eglys for more than a year testified that they made no progress during counseling and that further counseling would be of no assistance. It was his opinion that the children would be at serious risk if they were returned to the Egly household. Based on this evidence, we hold that the trial court's judgment was not clearly erroneous and should be affirmed.

## CONCLUSION

Accordingly, we now grant transfer, vacate the opinion of the Court of Appeals, and affirm the trial court.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

DICKSON, J., votes to deny transfer and dissents without opinion.