905 N.E.2d 47 (2009)
In the Matter of the Termination of the Parent-Child Relationship of A.S. and M.P.,
L.P., Appellant-Respondent
v.
Tippecanoe County Division of Child Services, Appellee-Petitioner.
No. 79A05-0901-JV-54.
Court of Appeals of Indiana.
April 30, 2009.
*48 Michael B. Troemel, Lafayette, IN, Attorney for Appellant.
Craig Jones, Lafayette, IN, Attorney for Appellee.

OPINION
BARNES, Judge.

Case Summary
L.P. ("Mother") appeals the termination of her parental rights to M.P. and A.S. We affirm.

Issue
Mother raises one issue, which we restate as whether the trial court impermissibly terminated her rights because she is mentally handicapped.

Facts
Mother has four children, but only two, M.P. and A.S., are the subject of this appeal. They have an older sibling, J.B., and a younger sibling, A.L.S. On September 5, 2007, Tippecanoe County Division of Child Services ("DCS") received a report that Mother left A.S. and J.B. in the care of a parent whose own children had been removed by DCS. M.P. was hospitalized at Riley Children's Hospital at the time for pneumonia, and Mother was with M.P. The caretaker was unable to reach Mother. Prior to the hospitalization at Riley, M.P. was in Home Hospital in Lafayette for two days. Following M.P.'s discharge, Mother failed to fill the prescriptions for medication. M.P. returned to Home Hospital and was subsequently admitted to Riley. M.P. not was current on immunizations, missed three medical appointments, and had not seen a physician since October of 2006. A.S. was three weeks old at that time and had not seen a physician since his birth. A.S. had also apparently been placed in the care of a neighbor at some *49 point, and Mother did not know the neighbor's name.
DCS instituted a Child in Need of Services ("CHINS") action on behalf of J.B., M.P., and A.S. on September 6, 2007. The children were removed from the home and children were declared CHINS on October 15, 2007. The trial court ordered a participation plan for Mother that included individual counseling, regular visitation, home-based services, random drug screens, parenting classes, psychological evaluation, obtaining employment, and maintaining appropriate housing. On January 3, 2008, a licensed psychologist performed a psychological evaluation of Mother. He determined her "overall level of intellectual ability falls in the Borderline Mental Retardation range of cognitive functioning." App. p. 55. Her scores also indicated a learning disorder, generalized anxiety disorder, and depressive disorder.
DCS filed a petition to terminate Mother's parental rights on July 29, 2008. On September 30, 2008, the trial court held a termination of parental rights hearing. Mother testified that she had not maintained steady employment. She also admitted to continuous changes in her housing situation. The home-based services counselor, Jenny Cahoon, testified that in the early stages her services, Mother was not attending required meetings or visitations. Mother's effort improved, but she still accused Cahoon and others of spoiling opportunities for her and did not take responsibility for her own decisions.
Christie Huck, case manager with DCS, testified that Mother was only attending about twenty-five percent of visits with her children early on because she said they were too early in the morning. The visits and participation in counseling and other services began to improve, and were steady over the last few months. Mother's motivation and willingness to obtain employment and housing, however, did not improve at all. At the time of the hearing, Mother was living in a home with five other adults, some with criminal records. During this time, Mother had not been truthful about her most recent pregnancy and failed to seek prenatal care until ordered to do so. Huck testified that circumstances leading to the children's removal would not be remedied. Huck said that although Mother loves her children, she has no stability in her household and did not remedy any of the problematic situations during the year her children were removed.
The trial court terminated Mother's parental rights to M.P. and A.S. on September 30, 2008. Their father's rights were also terminated that day.[1] This appeal followed.

Analysis
"When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility." Bester v. Lake County Office of Family and Children, 839 N.E.2d 143, 147 (Ind. 2005). "We consider only the evidence and reasonable inferences that are most favorable to the judgment." Id. Where a trial court enters findings and conclusions granting a petition to terminate parental rights, we apply a two-tiered standard of review. Id. First, we determine whether the evidence supports the findings. Id. Then we determine whether the findings support the judgment. Id. We will set aside a judgment only when it is clearly erroneous. Id. A judgment is clearly erroneous when the findings do not support the trial court's conclusions or the conclusions do not support the judgment. Id.
*50 A petition to terminate the parent-child relationship must allege:
(A) one (1) of the following exists:
(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
(ii) a court has entered a finding under IC XX-XX-XX-X.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
(iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;
(B) there is a reasonable probability that:
(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or
(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;
(C) termination is in the best interests of the child; and
(D) there is a satisfactory plan for the care and treatment of the child.
Ind.Code § 31-35-2-4(b)(2).
The DCS had the burden of proving these allegations by clear and convincing evidence. See Bester, 839 N.E.2d at 148. Clear and convincing evidence need not show that the continued custody of the parent is wholly inadequate for the child's survival. Id. Instead, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development is threatened by the parent's custody. Id.
Rather than challenging whether DCS had met the burden of proof, Mother instead contends that she cannot be subject to termination of her parental rights because of her low intellectual capacity. Mother realizes that Indiana law does not recognize such a rule, but insists that "this court write an opinion which bars the State from pursuing termination of parental rights of a retarded person." Appellant's Br. p. 16. Such a proposition is wholly unsupported by Indiana cases and statutes.
Our supreme court has recognized that mental retardation, standing alone, is not a proper ground for terminating parental rights. Egly v. Blackford County Dep't. of Pub. Welfare, 592 N.E.2d 1232, 1234-35 (Ind.1992). However, mother's parental rights were not terminated because of mental retardation. The trial court instead relied on Mother's failure to remedy the conditions that resulted in removal of her children and her ongoing threat to their well-being. The trial court found that she displayed an continuing lack of stability, a neglect of the children's medical needs, and a lack of progress in participating in the services offered. Although there may be some link between her mental deficits and failures to participate in offered services, her mental deficits do not excuse those failures or allow her to keep her children regardless of the danger to their health and well-being. No expert testified to link Mother's mental deficits to her failures during the year her children were in foster care. In fact, home-based counselor Cahoon testified that "the big picture with [Mother is] ... laziness, I think it's a lack of motivation and I think that she really wants to figure out how to live without working." Tr. p. 61.
In R.G. v. Marion County Office of Family and Children, 647 N.E.2d 326, (Ind.Ct.App.1995), trans. denied, both *51 mother and father had low IQs and diagnosed mental retardation. Their parental rights were terminated not because of their intellectual capacity, but because "they have both been unable and unwilling to develop the skills necessary to fulfill their legal obligations as a parent." R.G., 647 N.E.2d at 330. Like the parents in R.G., Mother has been unable to provide a stable home for her children, despite assistance from her family and various agencies.
Mother likens her situation to our State's prohibition on the execution of mentally retarded criminal defendants. This association is misplaced and inapposite: our State's criminal punishment of those with mental deficits has nothing to do with termination of parental rights. Indiana courts have repeatedly stated that termination proceedings are not designed to punish the parent, but rather to protect the best interests of the child. See A.J. v. Marion County Office of Family and Children, 881 N.E.2d 706, 717 (Ind.Ct.App. 2008), trans. denied.
Regardless of Mother's mental deficits, she was unwilling to participate in the programs offered to her. She was also unwilling or unable to maintain suitable employment and housing, even with the help and resources of family members and programs. DCS met its burden under the termination statute.

Conclusion
There is clear and convincing evidence to support the trial court's finding that the conditions resulting in the children's removal from the home would not be remedied, that continuation of the parent-child relationship poses a threat to the well-being of the children, that there is an adequate plan for the care of the children, and that termination of Mother's parental rights is in the children's best interests. Mother's mental deficits do not preclude this result. We affirm.
Affirmed.
BAKER, C.J., and MAY, J., concur.
NOTES
[1] Father is not part of this appeal.