## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2016, 8:15 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy Semones
Wilson & Semones
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:

B.A. and B.S. (Minor Children);

C.S. (Mother)

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

December 21, 2016

Court of Appeals Case No.
10A01-1604-JT-803

Appeal from the Clark Circuit Court

The Honorable J. Christopher Sturgeon, Judge Pro Tempore

Trial Court Cause Nos.
10C04-1501-JT-009
10C04-1501-JT-010

**Pyle, Judge.**

# Statement of the Case

C.S. ("Mother") appeals the termination of the parent-child relationship with her sons, B.A. and B.S. (collectively, "the children"), claiming that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside Mother's home will not be remedied; (2) a continuation of the parent-child relationship poses a threat to the children's well-being; and (3) termination of the parent-child relationship is in the children's best interests. Concluding that there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm.

We affirm.

# Issue

> Whether there is sufficient evident to support the termination of the parent-child relationship.

# Facts

Mother has two children, B.A., who was born in 2004, and B.S., who was born in 2011.[1] In mid-June 2012, a caller contacted DCS with concerns about the condition of Mother's home. A visit to the home revealed bugs, including

---

[1] B.A.'s father was served by publication and did not appear at the termination hearing. B.S.'s father voluntarily terminated his parental rights. Neither father is a party to this appeal.

roaches, on the counter, stove, and refrigerator, as well as trash strewn throughout the home. The home had been without power for a month, and Mother was in the process of being evicted from the house.

[4] At the end of June 2012, Mother left her children with an elderly male babysitter and told him she would return in a few hours. When Mother failed to return the following day and the man was unable to reach her at the telephone numbers that she had provided, the babysitter took the children to the local hospital and explained that he did not have any food to feed them. Mother eventually arrived at the hospital. She had been beaten by her boyfriend the previous evening and tested positive for opiates and marijuana. Mother was arrested, and the children were placed in foster care.

[5] DSC filed a petition alleging that B.A. and B.S. were children in need of services ("CHINS"). Following a hearing on the petition, the trial court adjudicated the children to be CHINS. Pursuant to the terms of the dispositional decree, Mother was ordered to: (1) maintain stable and appropriate housing and employment; (2) complete a substance abuse assessment and follow all recommendations; and (3) participate in domestic violence counseling and parenting education.

[6] Mother was also charged with two counts of neglect of a dependent as Class D felonies. In November 2014, Mother pled guilty to one of the counts as a Class A misdemeanor. The trial court sentenced her to one year, which was suspended to probation.

[7] In January 2015, DCS filed a petition to terminate Mother's parental rights. Testimony at the hearing revealed that Mother had failed to maintain stable housing and employment. Specifically, Mother had numerous living arrangements, including motels and friends' garages. She had also been homeless. At the time of the hearing, she was living in a garage with no heat or bathroom facilities. Mother was also unable to maintain employment that would have enabled her to support the children.

[8] The testimony further revealed that although Mother had completed a substance abuse assessment, she had failed to follow recommendations for weekly therapy to address her history of trauma as well as anxiety, stress, and depression. Mother had also failed to complete home-based services and a parenting education plan. According to one service provider, Mother had been difficult to locate because she moved so frequently.

[9] The children's foster father testified that the children had been placed with his family for three years and that the parents planned to adopt them. When B.A. arrived in the home, he was hyperactive, loud, and acted inappropriately. At the time of the hearing, he was much calmer and a straight-A student.

[10] Family case manager, Andrea Martin, and Guardian Ad Litem, Rebecca Lockard, both testified that termination of parental rights was in the children's best interest because the children had been removed from Mother's care for three years and Mother had shown no improvement during that time. Martin specifically testified that it had "been thirty-seven months of not having stability

in her life. She's not been able to obtain a home or maintain a home. She's not been able to keep a job for longer than three months . . . ." (Tr. 191). Martin further explained that "[B.A.] is doing great. He's excelling in school. He makes . . . mainly all A's. . . . He . . . seems a lot calmer, he seems happy. . . . [B.S. is] doing well also . . . he's always happy and smiling . . . developmentally he's definitely on target, maybe even advanced." (Tr. 194).

[11] Mother admitted that she had not had stable housing or employment over the past three years and that she did not follow the substance abuse assessment recommendations. She also admitted that she did not complete domestic violence counseling or parenting education classes. Lastly, she explained that a petition had recently been filed to revoke the probation imposed after she pleaded guilty to neglect of a dependent.

[12] Following the hearing, the trial court issued an order terminating Mother's parental rights. Mother now appeals.

# Decision

[13] Mother argues that there is insufficient evidence to support the termination of her parental rights. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.,* 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the

parents but to protect their children. *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[14] When reviewing the termination of parental rights, we will not weigh the evidence or judge the credibility of the witnesses. *K.T.K.,* 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id.* Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

[15] A petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.,* 989 N.E.2d at 1231.

[16] Here, Mother argues that there is insufficient evidence to support the termination of her parental rights. Specifically, she contends that the evidence is insufficient to show that there is a reasonable probability that: (1) the conditions that resulted in the children's removal or the reasons for placement outside the parent's home will not be remedied; and (2) a continuation of the parent-child relationships poses a threat to the children's well-being.

[17] At the outset, we note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.,* 924 N.E.3d 212, 220 (Ind. Ct. App. 2010). We therefore discuss only whether there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for their placement outside Mother's home will not be remedied.

[18] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's

fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.*

Here, our review of the evidence reveals that B.A. and B.S. were removed from Mother's home because she lacked stable housing and parenting skills. Three years later, Mother had still failed to obtain stable housing. She had also failed to participate in counseling to address her mental health issues and in court-ordered parenting education to improve her parenting skills. This evidence supports the trial court's conclusion that there was a reasonable probability that the conditions that resulted in the children's removal would not be remedied. We find no error.

Mother also argues that there is insufficient evidence that the termination was in the children's best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. The trial court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. In addition, a child's need for permanency is a

central consideration in determining the child's best interests. *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cnty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[21] Here, our review of the evidence reveals that Mother has not been able to maintain stable housing or employment since the children's removal in 2012. On the other hand, the children are thriving in a stable and nurturing foster home. In addition, both the DCS caseworker and the CASA testified that termination is in the children's best interests. This evidence supports the trial court's conclusion that termination is in the children's best interests.

[22] We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cnty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[23] Affirmed.

Baker, J., and Mathias, J., concur.