## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2017, 9:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of:
C.K. (a minor child), and

E.K. (mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

February 28, 2017

Court of Appeals Case No.
79A05-1608-JT-1763

Appeal from the Tippecanoe Superior Court

The Honorable Thomas K. Milligan, Senior Judge

Trial Court Cause No.
79D03-1602-JT-8

**Pyle, Judge.**

# Statement of the Case

E.K. ("Mother") appeals the termination of the parent-child relationship with her son, C.K. ("C.K."), claiming that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in C.K.'s removal or the reasons for placement outside Mother's home will not be remedied; (2) a continuation of the parent-child relationship poses a threat to C.K.'s well-being; and (3) termination of the parent-child relationship is in C.K.'s best interests. Concluding that there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm the trial court's judgment.

We affirm.

# Issue[1]

Whether there is sufficient evidence to support the termination of the parent-child relationship.

# Facts

In January and February 2015, DCS received reports that Mother: (1) had left three children, including one-year-old C.K., in a running car for over an hour; (2) used heroin daily with three men who lived in her home; (3) sold heroin; and (4) was the victim of domestic violence. Also during that time, Mother

---

[1] Mother also argues that the trial court erred in denying her motion for a continuance. However, our review of the transcript and appendix reveals that no such motion was filed. We therefore find no error.

tested positive for amphetamine and methamphetamine. In February 2015, DCS removed C.K. from Mother's care and filed a petition alleging that he was a child in need of services ("CHINS"). Following a hearing, the trial court adjudicated C.K. to be a CHINS in April 2015. The trial court ordered Mother to participate in a substance abuse assessment and to follow all recommendations. The court also ordered Mother to participate in a domestic violence group and to submit to random urine drug screens. In addition, the trial court ordered Mother not to use or possess any illegal drugs or alcohol.

[4] Mother participated in substance abuse assessments in March and April 2015. The report of the first assessment noted that Mother appeared to minimize her substance abuse. Following the assessment, DCS referred Mother to an intensive outpatient ("IOP") drug treatment program, which conflicted with Mother's work schedule. DCS then referred Mother to individual counseling to accommodate her schedule. Mother continued to deny using illegal drugs even though she tested positive for methamphetamine in May 2015. That same month, Mother was charged with Level 6 felony theft and Level 6 felony possession of heroin. She pled guilty to both counts.

[5] Mother also minimized the nature of the domestic violence between herself and Father. Although she had initially told DCS that Father was violent and had choked, shoved, stalked, and physically abused her, Mother allowed Father to return to live with her in the summer of 2015 despite a no-contact order. After Father moved back in with Mother, her drug use escalated. In July 2015, the trial court found Mother in contempt for testing positive for amphetamine,

methamphetamine, and morphine. The trial court suspended a sentence of incarceration on the condition that Mother remained drug and alcohol free and immediately enrolled in an IOP drug treatment program. That same month, Mother was charged with Class A misdemeanor trespass. She pled guilty to that offense as well.

[6] In September 2015, Mother was charged with Level 6 felony neglect of a dependent for leaving C.K. in the running car for an hour in January 2015. She pled guilty and was sentenced to two years, with one year executed and one year suspended to supervised probation. As part of her sentence, Mother was also ordered to complete substance abuse and mental health evaluations and to follow all orders in her CHINS case.

[7] Also in September 2015, Mother tested positive for heroin on two separate occasions. After the two positive results in September, Mother began to miss her drug screens. In October 2015, the trial court found Mother in contempt for a second time for failing to remain drug free and submit to random drug screens. The trial court sentenced her to fifteen days in jail and work release. Methamphetamine was found in Mother's garage in November 2015. Mother was hospitalized for a drug overdose in December 2015, and in January 2016, Mother was incarcerated because she had violated her probation by using drugs.

[8] DCS filed a petition to terminate both parents' parental rights in February 2016. At the April 2016 termination hearing, DCS Family Case Manager Ashley

Weinkauff ("Case Manager Weinkauff") testified that C.K. had been removed from Mother because of Mother's substance abuse and domestic violence issues. Case Manager Weinkauff testified that it was not likely that the reasons for C.K.'s removal would be remedied. Specifically, the case manager explained that the "same thing that [she had] said over is the repetitive pattern from both parents with their criminal involvement, the substance use . . . their volatile relationship that they have been back and forth with the whole case." (Tr. 206). The case manager further explained that Mother had failed to acknowledge "the severity of her substance use," and had failed to make "any progress dealing with her substance abuse issues." (Tr. 203, 226). Case Manager Weinkauff admitted that Mother had exhibited good parenting skills but nevertheless testified that termination was in C.K.'s best interests. The case manager further pointed out that Mother had not participated in the court-ordered domestic violence group.

[9] CASA Stan Kappes ("CASA Kappes") testified that C.K. had been removed from Mother because of her drug use and domestic violence issues. He further testified that the reasons for C.K.'s removal had not been remedied and that her patterns of conduct revealed that Mother could not remedy them. According to CASA Kappes, it was substance abuse that was "holding her back." (Tr. 23). CASA Kappes also testified that he was concerned that Mother had not completed a substance abuse program. Lastly, the CASA testified that termination was in C.K.'s best interests because "[i]t [had] been 15 months and [C.K.] deserve[d] some stability." (Vol. 2 Tr. 14). The CASA's written report

also provided that Mother's "addictions seem[ed] to override her better judgment and even though she ha[d] shown a lot of good parenting skills, she ha[d] not shown it in her total actions. Her drug use and associations put [C.K.] in danger." (CASA Ex. 1 at 3).

[10] Mother testified that she had always been employed and had housing. She also testified that she had been financially supporting C.K. while he was in placement with his paternal aunt and that she had talked to him every day.

[11] Following the hearing, the trial court issued an order that provides in relevant part as follows:

Conclusions of Law

1. The Court further finds that there is a reasonable probability that the conditions which resulted in the removal of the child will not be remedied and the reasons for the placement outside of the parent's home will not be remedied. To support this conclusion, the Court cites to the parent's history of drug use which is serious involving heroin, methadone, methamphetamine, amphetamines, as well as opiates such as oxycontin, and hydrocodone. The parents have been offered services to address those drug issues[.] [T]hey have failed and refused to take advantage of those services and the Court believes given their history, they will not readily agree to significantly and intentionally and purposely address those issues. The Court would also point [to] the domestic violence issues which the parents engaged in. Specifically, the Father's abuse of Mother physically, mentally, and emotionally and the parties resistance to the parties entering into services that would address those issues on any substantive level. . . .

(App. 18). The trial court terminated the parental rights of both Mother and Father. Mother now appeals.[2]

# Decision

Mother argues that there is insufficient evidence to support the termination of her parental rights. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.,* 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents but to protect their children. *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

When reviewing the termination of parental rights, we will not weigh the evidence or judge the credibility of the witnesses. *K.T.K.*, 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id*. Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly

---

[2] Father filed a notice of appeal in August 2016. However, one month later, he filed a motion to dismiss the appeal. This Court granted Father's motion and dismissed his appeal with prejudice.

erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

[15] A petition to terminate parental rights must allege:

>    (B) that one (1) of the following is true:
>
>    >    (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
>    >    (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
>    >    (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
>    (C) that termination is in the best interests of the child; and
>
>    (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.,* 989 N.E.2d at 1231.

[16] Here, Mother argues that there is insufficient evidence to support the termination of her parental rights. Specifically, she contends that the evidence is insufficient to show that there is a reasonable probability that: (1) the conditions that resulted in C.K.'s removal or the reasons for placement outside

the parent's home will not be remedied; and (2) a continuation of the parent-child relationships poses a threat to C.K.'s well-being.

[17] At the outset, we note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.,* 924 N.E.3d 212, 220 (Ind. Ct. App. 2010). We therefore discuss only whether there is a reasonable probability that the conditions that resulted in C.K.'s removal or the reasons for her placement outside Mother's home will not be remedied.

[18] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013). The trial court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be

remedied. *Id.* Requiring trial courts to give due regard to changed conditions does not preclude them from finding that a parent's past behavior is the best predictor of her future behavior. *E.M.*, 4 N.E.3d at 643.

[19] Here, our review of the evidence reveals that C.K. was removed from Mother's home because of Mother's drug use and domestic violence issues. Both the case manager and the CASA testified that these reasons for C.K.'s removal had not been remedied. Following C.K.'s removal, Mother continued to use illegal drugs such as heroin, amphetamine, and methamphetamine. She failed to participate in a court-ordered domestic violence group and allowed Father to return to live with her despite a no-contact order. After Father moved back in with Mother, her drug use escalated. This evidence supports the trial court's conclusion that there was a reasonable probability that the conditions that resulted in C.K.'s removal would not be remedied. We find no error.

[20] Mother also argues that there is insufficient evidence that the termination was in C.K.'s best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. The trial court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the

parent-child relationship. In addition, a child's need for permanency is a central consideration in determining the child's best interests. *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cnty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[21] Here, our review of the evidence reveals that CASA Kappes testified that termination was in C.K.'s best interests because C.K. deserved stability after fifteen months. Case Manager Weinkauff also testified that termination was in C.K.'s best interests. The testimony of these service providers, as well as the other evidence previously discussed, supports the trial court's conclusion that termination was in C.K.'s best interests.

[22] We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cnty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[23] Affirmed.

Baker, J., and Mathias, J., concur.