## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 14 2018, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Termination of the Parent-Child Relationship of: E.H. (Minor Child);

J.H. (Father),

*Appellant-Defendant,*

v.

The Indiana Department of Child Services,

*Appellee-Plaintiff.*

May 14, 2018

Court of Appeals Case No.
49A02-1710-JT-2488

Appeal from the Marion Superior Court

The Honorable Marilyn Moores, Judge
The Honorable Larry Bradley, Magistrate

Trial Court Cause No.
49D09-1705-JT-406

**Pyle, Judge.**

# Statement of the Case

J.H. ("Father") appeals the termination of the parent-child relationship with his son, E.H., ("E.H."), claiming that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in E.H.'s removal or the reasons for placement outside Father's home will not be remedied; (2) a continuation of the parent-child relationship poses a threat to the E.H.'s well-being; and (3) termination of the parent-child relationship is in E.H.'s best interests. Concluding that there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm the trial court's judgment.[1]

We affirm.

# Issue

Whether there is sufficient evidence to support the termination of the parent-child relationship.

# Facts

The evidence and reasonable inferences that support the judgment reveal that E.H. was born in February 2006. His parents are Father and K.S. ("Mother"). In 2009, Father and E.H. were transported to the hospital by ambulance after being involved in an automobile accident. Father thought he was going to be

---

[1] E.H.'s mother is not a party to this appeal.

arrested so he left three-year-old E.H. at the hospital by himself. At the time of the accident, Mother was involved in a relationship with D.B. ("D.B."). Shortly after the accident, Mother gave birth to E.H.'s stepsister, B.B. ("B.B.").

[4] In March 2016, Mother was arrested for possession of heroin and child endangerment after she was found in her car with her children. She had passed out from using heroin and had a needle sticking out of her arm. As a result of Mother's arrest, DCS filed a petition alleging that E.H. was a child in need of services ("CHINS"). Father, who had not had any contact with E.H. since he had left the child at the hospital seven years earlier, could not be located, and E.H. was placed in kinship care with D.B.

[5] Father was eventually located in August 2016 and served with paperwork for the CHINS proceeding. However, he failed to attend any of the CHINS hearings and family meetings. The trial court adjudicated E.H. to be a CHINS in September 2016 and ordered Father to complete a Father Engagement Program.

[6] In May 2017, DCS filed a petition to terminate the parental rights of both Mother and Father. Father appeared telephonically at the termination hearing because he was incarcerated in a county jail on a failure to identify charge and was scheduled to be released the following day. Following his release, he was still facing a probation violation and did not know where he was going to live. Father admitted that he had not participated in the court-ordered CHINS services and that the last time he had seen eleven-year-old E.H. was the night he

had left the then three-year-old child in the hospital. Father agreed that E.H. would not recognize him.

[7] The evidence further revealed during the eight years that Father had not seen or spoken to E.H., Father could have reached Mother by contacting her mother. Mother's mother testified that Father had not contacted her during that time. At the time of the hearing, Mother had signed a consent for D.B. to adopt E.H. According to Mother, D.B. had raised E.H. for the past eight years, and E.H. viewed him as his father.

[8] Also at the time of the hearing, E.H. lived with D.B. and B.B. He was doing well in school and playing football. E.H.'s therapist Charity Gichina ("Therapist Gichina") testified that E.H. had been working on anger issues as a result of Father abandoning him and failing to contact him for eight years. As E.H. addressed this anger in therapy, he became more compliant at school and his grades improved. Therapist Gichina further explained that E.H. received the consistency and love that he needed from D.B. She also expressed her concern that if Father's parental rights were not terminated, "that [would] destabilize [E.H.] and . . . expose him to experience past trauma reminders." (Tr. 91). In addition, Therapist Gichina testified that E.H. did not want to see Father. She recommended terminating Father's parental rights.

[9] Guardian Ad Litem Jennifer Ankney ("GAL Ankney") testified that termination was in E.H.'s best interests. Father had shown no interest in pursuing a relationship with his son for the past eight years, and E.H. wanted

D.B. to adopt him. DCS Family Case Manager Ashli Saba ("Case Manager Saba") also testified that termination was in E.H.'s best interests. According to Case Manager Saba, D.B. planned to adopt E.H.

[10] Following the hearing, the trial court issued a detailed order terminating Father's parental relationship with E.H. Father appeals.

# Decision

[11] Father argues that there is insufficient evidence to support the termination of his parental rights. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.,* 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents but to protect their children. *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[12] When reviewing the termination of parental rights, we will not weigh the evidence or judge the credibility of the witnesses. *K.T.K.*, 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id*. Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly

erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

[13]     A petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2).  DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.,* 989 N.E.2d at 1231.

[14]     Here, Father argues that there is insufficient evidence to support the termination of his parental rights.  Specifically, he first contends that the evidence is insufficient to show that there is a reasonable probability that:  (1) the conditions that resulted in E.H.'s removal or the reasons for placement

outside the parent's home will not be remedied; and (2) a continuation of the parent-child relationships poses a threat to E.H.'s well-being.

[15] At the outset, we note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.,* 924 N.E.3d 212, 220 (Ind. Ct. App. 2010). We therefore discuss only whether there is a reasonable probability that the conditions that resulted in E.H.'s removal or the reasons for his placement outside the home will not be remedied.

[16] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013). The trial court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be

remedied. *Id.* Requiring trial courts to give due regard to changed conditions does not preclude them from finding that a parent's past behavior is the best predictor of his future behavior. *E.M.*, 4 N.E.3d at 643.

[17] Here, our review of the evidence reveals that E.H. was removed from Mother's home because of her drug use and neglect. He was not placed with Father because DCS was initially unable to locate him. When Father was located, he was served with paperwork for the CHINS proceeding. However, he failed to attend any of the CHINS hearings and family meetings. He also failed to participate in court-ordered services after E.H. was adjudicated to be a CHINS. At the time of the hearing, Father was incarcerated. Although he was scheduled to be released the following day, he was facing a probation violation and did not know where he was going to live. Father admitted that he had not seen E.H. in eight years. This evidence supports the trial court's conclusion that there was a reasonable probability that the conditions that resulted in E.H.'s placement outside the home would not be remedied. We find no error.

[18] Father also argues that there is insufficient evidence that the termination was in E.H.'s best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. The trial court

need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. In addition, a child's need for permanency is a central consideration in determining the child's best interests. *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[19] Here, our review of the evidence reveals that E.H. had been working with his therapist on anger and abandonment issues regarding Father. As E.H. addressed his anger in therapy, he became more compliant at school and his grades improved. E.H. received the consistency and love that he needed from D.B., and E.H.'s therapist was concerned that if Father's parental rights were not terminated, "that [would] destabilize [E.H.] and . . . expose him to experience past trauma reminders." (Tr. 91). D.B. had been E.H.'s father figure for the previous eight years and wanted to adopt E.H. E.H. did not want to see Father and was in favor of the adoption. GAL Ankney and Case Manager Saba both testified that termination was in E.H.'s best interests. This evidence supports the trial court's conclusion that termination was in E.H.'s best interests.

[20] We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232,

1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[21] Affirmed.

Vaidik, C.J., and Barnes, J., concur.