# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 11 2018, 9:12 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Don R. Hostetler
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of J.H. (Minor Child); | December 11, 2018 |
| J.R. (Father), | Court of Appeals Case No. 18A-JT-1040 |
| *Appellant-Respondent,* | Appeal from the Marion Superior Court |
| v. | The Honorable Gary Chavers, Judge Pro Tem |
| The Indiana Department of Child Services, | The Honorable Larry Bradley, Magistrate |
| *Appellee-Petitioner,* | Trial Court Cause No. 49D09-1706-JT-508 |
| and | |
| Child Advocates, Inc., | |
| *Appellee-Guardian Ad Litem.* | |

**Pyle, Judge.**

## Statement of the Case

J.R. ("Father") appeals the termination of the parent-child relationship with his son, J.H. ("J.H."), claiming that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in J.H.'s removal or the reasons for placement outside Father's home will not be remedied; (2) a continuation of the parent-child relationship poses a threat to J.H.'s well-being; and (3) termination of the parent-child relationship is in J.H.'s best interests. Concluding that there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm the trial court's judgment.[1]

We affirm.

## Issue

> Whether there is sufficient evidence to support the termination of the parent-child relationship.

## Facts

The evidence and reasonable inferences that support the judgment reveal that J.H. was born to fifteen-year-old Mother and sixteen-year-old Father in June 2013. At the time of his birth, J.H. tested positive for marijuana, and Mother

---

[1] J.H.'s mother ("Mother") is not a party to this appeal.

admitted that she had used illegal drugs during her pregnancy. In January 2014, the State removed J.H. from Mother's home, placed him in foster care, and filed a petition alleging that he was a Child in Need of Services ("CHINS"). The petition specifically alleged that Mother "had been involved with the DCS through an Informal Adjustment Agreement (IA), but services ha[d] not remedied the reasons for the DCS' involvement." (Exhibits at 116). Regarding Father, the petition alleged that he had "not successfully demonstrated the ability and willingness to provide [J.H.] with a safe, stable home." (Exhibits at 116).

[4] Following a March 2014 hearing on the CHINS petition, the trial court adjudicated J.H. to be a CHINS. Four days after the hearing, Father was arrested and charged with murder and robbery. In September 2015, pursuant to a plea agreement, Father pled guilty to Class B felony robbery and was sentenced to fifteen years with five years suspended.

[5] In June 2017, the State filed a petition to terminate the parental rights of both Mother and Father. Father appeared at the April 2018 termination hearing telephonically from the Plainfield Correctional Facility ("PCF"). He testified that he had been incarcerated since March 2014 and had not seen J.H. since that time. Father further testified that he had not participated in any parenting programs even though PCF offers them. In addition, Father testified that his projected release date was October 2018; however, the Department of Correction website lists his release date in July 2019. *See*

https://www.in.gov/apps/indcorrection/ofs/ofs (last visited November 26, 2018).

[6] Also at the hearing, DCS Family Case Manager Jan Blevins ("FCM Blevins") testified that, although she had contacted Father by letter, Father had never responded to her letter or contacted her to inquire about J.H. FCM Blevins also testified that termination was in J.H.'s best interests because J.H. needed a stable home that Father was unable to provide.

[7] Guardian Ad Litem Christy Nunley ("GAL Nunley") also testified that termination was in J.H.'s best interests "to provide [J.H.] with a stable permanent life." (Tr. 47). GAL Nunley further testified that J.H. was "very bonded to his current placement" and that the permanency plan for J.H. was adoption. (Tr. 47).

[8] In May 2018, the trial court issued a detailed order terminating Father's parental relationship with J.H. Father appeals.

## Decision

[9] Father argues that there is insufficient evidence to support the termination of his parental rights. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.,* 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents

but to protect their children. *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied.*

[10] When reviewing the termination of parental rights, we will not weigh the evidence or judge the credibility of the witnesses. *K.T.K.,* 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id.* Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

[11] A petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.,* 989 N.E.2d at 1231.

[12] Here, Father argues that there is insufficient evidence to support the termination of his parental rights. Specifically, he first contends that the evidence is insufficient to show that there is a reasonable probability that: (1) the conditions that resulted in J.H.'s removal or the reasons for placement outside the parent's home will not be remedied; and (2) a continuation of the parent-child relationships poses a threat to J.H.'s well-being.

[13] At the outset, we note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.,* 924 N.E.3d 212, 220 (Ind. Ct. App. 2010). We therefore discuss only whether there is a reasonable probability that the conditions that resulted in J.H.'s removal or the reasons for his placement outside the home will not be remedied.

[14] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires a trial court to judge a parent's fitness at the time of the termination proceeding, taking into consideration

evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013). The trial court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.* Requiring a trial court to give due regard to changed conditions does not preclude it from finding that a parent's past behavior is the best predictor of his future behavior. *E.M.*, 4 N.E.3d at 643.

[15] Here, our review of the evidence reveals that J.H. was removed from Mother's home in January 2014. He was not placed with Father because Father had failed to demonstrate the ability to provide his son with a safe and stable home. Two months later, Father was charged with murder and robbery. He later pled guilty to Class B felony robbery and was sentenced to fifteen years with five years suspended. Father's earliest release date is July 2019. At the time of the hearing, Father had not seen J.H. for four years. In addition, although FCM Blevins had contacted Father, he had never made any attempt to contact the case manager or to obtain information about his son during this time. This evidence supports the trial court's conclusion that there was a reasonable probability that the conditions that resulted in J.H.'s placement outside the home would not be remedied. We find no error.

[16] Father also argues that there is insufficient evidence that the termination was in J.H.'s best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. The trial court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. In addition, a child's need for permanency is a central consideration in determining the child's best interests. *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[17] Here, our review of the evidence reveals that at the time of the termination hearing, J.H. had been out of the home for over four years. FCM Blevins testified that termination was in J.H.'s best interests because J.H. needed a permanent home that Father was unable to provide. GAL Nunley also testified that termination was in J.H.'s best interests so that he would have a stable permanent life. In addition, GAL Nunley further testified that J.H. was bonded to his current caretaker and that the permanent plan for him was adoption.

This evidence supports the trial court's conclusion that termination was in J.H.'s best interests.

[18] We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[19] Affirmed.

Najam, J., and Crone, J., concur.