## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 25 2017, 9:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Harold E. Amstutz
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.,
Attorney General of Indiana

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:
M.D., M.D., and M.E., (minor children);

S.E. (mother)

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

May 25, 2017

Court of Appeals Case No.
79A04-1701-JT-109

Appeal from the Tippecanoe Superior Court

The Honorable Faith A. Graham, Judge

Trial Court Cause Nos.
79D03-1603-JT-30
79D03-1603-JT-31
79D03-1603-JT-32

**Pyle, Judge.**

# Statement of the Case

S.E. ("Mother") appeals the termination of the parental relationship with her children, Mar.D. ("Mar.D"), Mas.D.("Mas.D."), and Me.D. ("Me.D."), (collectively "the children"), claiming that: the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that (1) there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside Mother's home will not be remedied; (2) a continuation of the parent-child relationship poses a threat to the children's well-being; and (3) termination of the parent-child relationship is in the children's best interests. Concluding that there is sufficient evidence to support the termination of the parent-child relationship, we affirm the trial court's judgment.[1]

We affirm.

# Issue

Whether there is sufficient evidence to support the termination of the parent-child relationship.

---

[1] Mar.D. and Mas.D. have the same father. His parental rights were terminated in the same order that terminated Mother's parental rights. However, he is not a party to this appeal. Me.D.'s father voluntarily relinquished his parental rights before the termination hearing.

# Facts

[3] Mother is the parent of son, Mar.D, who was born in December 2009; son, Mas.D, who was born in January 2012; and daughter, Me.D., who was born prematurely in January 2015. Me.D.'s meconium also tested "extremely high" for THC, which is found in marijuana. (DCS Ex. 4 at 8). While Me.D. was in the Neo-Natal Intensive Care Unit, DCS received a report alleging the neglect of Mar.D and Mas.D. relating to their living conditions. At that time, Mother and the two boys were living with the boys' paternal grandmother, paternal uncle, paternal uncle's girlfriend, and their three children. DCS received a second report at the end of the month alleging the same conditions.

[4] At the time of DCS's initial visit to the house, the odor was "overwhelming." (DCS Exhibit 4 at 8). Cockroaches ran around the living room, which was filled with bags of dirty clothes and trash. There were also cockroaches in the kitchen cabinets and refrigerator. The family acknowledged both a cockroach and bedbug infestation, and there were only two beds for the nine residents. The boys were removed from Mother's home and placed in foster care.

[5] In April 2015, all three children were adjudicated to be children in need of services ("CHINS"). Mother was court-ordered to: (1) obtain and maintain safe housing suitable for the children; (2) obtain and maintain a legal and stable source of income; (3) abstain from the use or possession of illegal drugs; and (4) submit to random urine drug screens. Mother was also ordered to participate in: (1) therapy; (2) home-based case management services; (3) an intensive outpatient program; and (4) supervised parenting time.

[6] In March 2016, DCS filed a petition to terminate Mother's parental rights. At the May 2016 termination hearing, all participants in the case learned that Mother was in the hospital because she had just given birth to a fourth child. The trial court rescheduled the hearing for August 2016 so that Mother could attend. At that hearing, the evidence revealed that Mother was sleeping in a homeless shelter and had never obtained suitable housing for the children. She had also failed to maintain stable employment and had missed seventy of seventy-five to seventy-eight scheduled drug screens. The few drug screens that she had submitted had been positive for marijuana. Mother had been unsuccessfully discharged from therapy and had never attended the intensive outpatient program. She had also been discharged from the home-based case management services program because she had showed no initiative and had failed to make any progress. The evidence further revealed that Mother had been unable to manage her children by herself during supervised visitation.

[7] Mother testified that in September 2015, she had been shot in the back at her sister's home. She also testified that she had been a daily marijuana user until May 2016. Mother specifically explained that smoking marijuana was a "stress reliever from everything that was going on." (Tr. 53).

[8] Family Case Manager Carol Mullen ("Case Manager Mullen") testified that Mar.D., who had been diagnosed with autism, had demonstrated significant social impairment when he had been removed from Mother's home. Although Mar.D. was five years old at the time of removal, he did not eat solid food and was still wearing diapers. Both boys had tooth decay, and neither had had

routine medical care. The two boys did not interact with each other and had significant sleep issues. At the time of the termination hearing, Mar.D. was eating solid food, had demonstrated verbal skills, and was attending developmental preschool. Case Manager Mullen testified that termination was in the children's best interests "[b]ecause the parents [were] not able to take of the children and provide them with developmental needs or even provide them with basic safety in [Mother's] case." (Tr. 127). CASA Valerie Adkins ("CASA Adkins") testified that the children had been removed from Mother's home because of Mother's drug use and the condition of the home. Like Case Manager Mullen, CASA Adkins testified that termination was in the children's best interests.

[9] Following the hearing, the trial court issued a detailed order terminating Mother's parental rights. Mother now appeals.

# Decision

[10] Mother argues that there is insufficient evidence to support the termination of her parental rights. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the

parents but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[11] A petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.,* 989 N.E.2d at 1231.

[12] When the trial court's judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016).924 ne2d2 First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside a trial court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.*

Findings are clearly erroneous only when the record contains no facts or inferences to be drawn therefrom that support them. *In re A.G.*, 6 N.E.3d 952, 957 (Ind. Ct. App. 2014). A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[13] As a preliminary matter, we note that Mother challenges none of the trial court's findings. As a result, she has waived any argument relating to whether these unchallenged findings are clearly erroneous. *See McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) (explaining that unchallenged trial court findings were accepted as true). We now turn to the issue in this case.

[14] Here, Mother argues that there is insufficient evidence to support the termination of her parental rights. Specifically, she first contends that the evidence is insufficient to show that there is a reasonable probability that: (1) the conditions that resulted in the children's removal or the reasons for placement outside the parent's home will not be remedied; and (2) a continuation of the parent-child relationships poses a threat to the children's well-being.

[15] At the outset, we note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.,* 924 N.E.3d 212, 220 (Ind. Ct. App. 2010). We therefore discuss only whether there is a reasonable probability that the conditions that resulted in the children's

removal or the reasons for her placement outside Mother's home will not be remedied.

[16] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*. The trial court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.* Requiring trial courts to give due regard to changed conditions does not preclude them from finding that a parent's past behavior is the best predictor of her future behavior. *E.M.*, 4 N.E.3d at 643.

[17] Here, our review of the evidence reveals that the children were removed from Mother because she was unable to provide them with safe and secure housing. She also regularly abused marijuana. At the time of the hearing, Mother was

sleeping in a homeless shelter, had been unsuccessfully discharged from therapy, and had never attended an intensive outpatient program. She had also been discharged from the home-based case management services program because she had showed no initiative and had failed to make any progress. This evidence supports the trial court's conclusion that DCS proved by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside Mother's home will not be remedied.

[18] Next, Mother argues that there is insufficient evidence that the termination was in the children's best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. The trial court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. In addition, a child's need for permanency is a central consideration in determining the child's best interests. *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v.*

*Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[19] Here, our review of the evidence reveals that Mother has not been able to maintain stable housing or employment since the children's removal in February 2015. In addition, both the family case manager and the CASA testified that termination is in the children's best interests. This evidence supports the trial court's conclusion that termination is in the children's best interests.

[20] We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[21] Affirmed.

May, J., and Brown, J., concur.